Good afternoon Mr. Senior Judge. Good afternoon your honors. My name is Jim O'Brien and I am here on behalf of the estate of Kirk Foster and Kelly Foster as the appellants. This is an ERISA action to obtain life insurance benefits. Kirk within 31 days of May 31st 2016 and following a life insurance premium payment made by American Marine and accepted by United in the month of May of 2016. The estate takes the position that and I believe that appellees will also agree that the policy has made no provision for refunds of premiums paid. There's no contractual provision to that effect. The policy has no provisions for terminating premiums paid on behalf of a disabled employee. Kirk Foster was not a disabled employee despite the fact that he was not actively working for American Marine at the time. The life insurance premium payments were made for February, March, April and May. So it seemed like one version of your theory was that American Marine had essentially taken on either a discretionary obligation or maybe an obligation that was in the contract to pay his premiums because he was disabled. Is that one of your theories? There aren't the facts to say that what American Marines intentions were at the time of making payments. In oral argument below it was my understanding from American Marine that there was discussion of three payments being made and an uncertainty as to the basis behind the fourth payment in May of 2016. We take the position that because Kirk was not actively working after February 2016, all four payments had to be made because Kirk was a disabled employee. So is there contract language that requires American Marine to pay his premiums because he's disabled? That is unclear. There's no specific provision on that. There's just no provisions on the continued payment of premiums. So one theory would be that they paid his premiums through the time that he still had the vacation and sick leave. What led him to believe, if he did believe, that they would continue past the end of the vacation and sick leave? Well, it comes down to how the court perceives these monthly payments. We take the position that there is no authority under the policy for American Marine to make payments because Kirk was actively working for the company. So that ends the inquiry over paying payments on behalf of Kirk because he was actively working. Which leaves the only other option, which is these payments had to be made because he was disabled. And even United would agree that as of the for his status as a disabled employee. Well, I think you had a, you described them at one point as discretion, having discretion to make these payments. Are you saying now that they didn't have discretion to make those payments? No, no. There's just no provision on American Marine's discretion except to be able to tell the court that it could not have been on the basis of active working. So, but did they ever tell him that they would continue to pay the benefits after he stopped having sick leave and vacation leave? There is no evidence that I can give the court about any kind of communication between American Marine and Kirk with respect to his status as a disabled employee and with respect to did he know that they had paid February, March and April? We don't know because there's not conversation. There's a body of text messaging that was developed in the course of the record. But there to my recollection, there is no texting of any kind of discussion on payments being paid at all, whether as an actively working employee or as a disabled employee. So, because it seemed like another version of your theory might be that he thought they had made the May payment, but then didn't know it had been refunded. But it sounds like he wouldn't have known they'd even made the May payment. Is that what you're saying? That is correct. I do not want the court to believe that Kirk had any, um, conscious appreciation of the if he didn't know that any premiums had been paid, what in the plan language made him think his insurance would continue if he himself didn't make the payments? No, I don't think that that's the case. I think what happened here is and this is one of the areas where we think the lower court might have misunderstood the arguments that were being presented to it. We believe that Kirk simply wasn't being informed. And there is, you've seen these arguments about whether or not he actually received some kind of notice of conversion. And that was never tied to by the judge below. I was never tied to any kind of trigger device other than to say, generally, which is where Judge Christensen went. Generally speaking, if we tell you about a conversion order, we don't have to specifically tell you when you better exercise that 31 day effort, which then comes back to all of the problems. And that interpretation, the best reading of the plan language would have been that he had to start paying within 31 days of February, right? Yes. So if he never knew that the company what was paying in February, March and April, then why wouldn't he have started paying in March if he wanted it to continue? Because it was not, at least in looking at those text messages, that was never an issue. He did. He, I think, was part of the argument below. He understood that his status with the company, besides being actively employed, wasn't going to change. He had no reason to think that there was going to be a change based on ad and sort of as an under underscoring that very problem. There is that subset of argument that showed that we disputed whether he had actual knowledge he was ever terminated. And while there was the April 15 2016 letter, there was also an 16th letter from his immediate supervisor out of Alaska saying, Great job. I'm sorry, I didn't really understand this from your brief. Are you saying that he wasn't actually terminated? No, I'm saying he wasn't informed of his termination. So as to be able to give him or to empower him to trigger his right to convert the policy. Well, what did he think had happened in the difference? Being laid off allows an employee to believe that there may be a return to work. Under what definition? I mean, wait, that's not the way I understood that term. Is that is that a term the way it's used in this industry? I do not have a term specific to industry, but I don't believe it is. I that's happening. A number of people who are receiving unemployment have been told they've been laid off, but don't necessarily conclude they'll never come back to the job. But in the meantime, they don't have the job, right? That's true. Council Judge Gould, if I could interject a question, please. Did your client get a clear notice of his rights to convert the policy to be an individual policy after term? After he was terminated from the American Marine? Your Honor. The sound didn't come across on your answer before you said you're on. I'm sorry. No, he did not receive that information. Your Honor, at any time after he was informed he was laid off on February 1st. And it's my understanding from the arguments below that both American Marine and United would claim that when he received the plan in February, February 2nd, which does contain policy provisions on conversion and portability, no one pointed out that he had to exercise any right at that point and that Judge Christensen below believed that that was a sufficient notice of right of conversion and portability when he received it on August on February 1st or on February 2nd. But Mr. O'Brien, doesn't the fact that he forwarded the email to himself that contained the policy with adding to the email for follow up and action suggest otherwise that he was aware that he had to do something? I think that that's a conclusion that is not borne out by the status of evidence that we have through the texting that went on between Mr. Steady and Mr. Foster at the time. And Your Honor, if it be all right, I would like to reserve 2.5 minutes for rebuttal. It's fine with me. My colleagues are not objecting. We'll now let you keep some powder dry for rebuttal. Thank you very much, Your Honor. Okay, now on the other side of the case, we've got Mr. Milton, Mr. Beaver. And which of you is arguing first? Yes, Judge, we discussed this earlier, and Mr. Beaver graciously allowed me to go first, and my arguments could be fairly short. Please proceed. May it please the Court, I'm Steve Milch. I represent American Marine Corporation and American Marine Services Group Benefit Plan. You know, after reviewing the appellant's opening brief, it wasn't clear to me whether my clients were even parties to this appeal. Consequently, and in an abundance of caution, my response brief simply pointed out why my clients obtained summary judgment on the claims that point out the fact that the appellants, in their opening brief, didn't dispute the validity of those particular rulings whatsoever. In any event, I agree with my co-defendant, United of Omaha, that appellants in this appeal are only appealing the district court's resolution of count three of the amended complaint. And what count three is, is simply a claim for life insurance benefits under the terms of the plan pursuant to ERISA section 502A1B. And as I pointed out in my response brief, it's well established in the Ninth Circuit that employers, plant administrators, and other entities that do not decide or pay benefit claims are not proper defendants in an ERISA action to recover benefits. So, I'm interesting there because I didn't understand claim three to be as narrow as your characterization. So, it seems like claim three is a little bit vaguely worded, but could be encompassing a notice obligation that you are no longer going to pay the benefits after April, or that perhaps also just an obligation to continue to pay the benefits because he was disabled. I think both of those arguments are in his opening brief in some form and also arguably could be part of claim three. So, on the assumption that we might consider this not being waived, could you address why you didn't have an obligation to notify him that you were going to stop paying in April, or whether you did notify him? And then also, if you had an obligation to continue paying because he was disabled? Your Honor, we, and I think Mr. O'Brien pointed out, he was, Mr. Foster was provided a Certificate of Insurance slash Summary Plan Description, which was adequately explained to him all the parameters of this coverage. Once his job was terminated, he was no longer eligible for life insurance benefits. He was fully aware of the fact that, you know, through the graciousness of American Marine, even though he was laid off on February 1st, they continued to keep him on the payroll and employed until April 15th, after he exhausted his accumulated vacation and sick days. He knew full well that April 15th was the last effective day of his employment. I'm sure you know that, so he might have understood that he was terminated in February, and on the first thing you said, it would seem like his insurance would have ended in February, but it didn't. It continued through April. So how would he have understood that it was going to continue through April, but then stop? The Summary Plan Description, it was under a waiver of premium provision. Because he was disabled, the employer could continue to pay the premiums for a, it was a nine-month elimination period. But once it got up to April 5th, and we did, American Marine paid premiums for February, March, and April. In April, that's when we sent an employee termination report to United of Omaha, informing them that Mr. Foster's employment was ending as of April 15th, and instructing them to remove Mr. Foster from coverage effective May 1 of 2016. Did Mr. Foster get a copy of that? Pardon me? Did Mr. Foster have a copy of that? I don't know. He had a copy of the Summary Plan Description, which fully informed him of what would happen when his employment was terminated. And it instructed him that after that date, he would have 31 days in which to apply for portability or conversion to an individual policy. And for whatever reason, he never did it. But how would he know that the termination date that was relevant was April 15th, not February 1st? He was told that. When? He was told that on February 1st, when he was told he was laid off. I provided in our excerpts, an email that he was provided by his employer that instructed him that that he had 35 days of accumulated sick days, and 20 accumulated vacation days. And if you take those 35, I'm sorry, 55 days, the work days, it lapses on April 15th. So he was specifically told, you know, that April 15th was his effective date of termination. Did those emails just say that's the end of your sick leave? Or did they also say and that will be when your insurance payments from American Marine will stop and your termination will be effective? Well, I, you know, he was fully aware that we were continuing. He was still on payroll until April 15th. Okay. So he was still employed. You know, the SPD specifically says once you are terminated, your life insurance ends. So it makes clear that as far as an employer or a plant administrator, that's the only notice that we're required to provide to the employees. And Mr. O'Brien admitted during the oral argument on the cross motions for summary judgment, that the SPD adequately explained everything about eligibility and termination and conversion and portability and everything else. Mr. Milch, Judge Gould, if I may interject a question, please. So I think at least as I read it, the SPD was pretty clear in how that works. But what is the documentary evidence, if there is any, that indicates that Mr. Foster was told that his employment terminated at the end of his accrued vacation time? There's no specific document that we have that says April 15th. Okay, Judge. He was informed of that informally. But I mean, it's, it's undisputed that he knew full well that April 15th was his last day of employment. Okay, well, what's the, what's the evidence that he was informed of that informally? The evidence that what? That he was informed informally. I assume that informally, you mean somebody told him, they said this or that, but he may not have gotten a document that said that. It's an affidavit from a fellow by the name of Carl, I'm sorry, Carl Maruyama, who was the benefits administrator for American Marine that was submitted in the court below. Okay, thank you. Is that in the record here? Can you, is that a document that we could look at? Certainly, it's a, it's in the, well, the appellant filed every document that was filed in the district court below. I filed a supplemental excerpt to record. And Mr. Maruyama's affidavit is located in those. Okay, at some time after the argument, could you provide the clerk of the court with the supplemental excerpt of record pages? If it might help, I think it might be at ER 43. Yes, I found the affidavit. It's in the affidavit. I'm just trying to read it now. Where does he say that he explained this? Well, it lays out, you know, he was orally told April 15th. You know, we're raising issues on this thing that were never raised in the appellant's briefs, but it's undisputed that he knew April 15th was his last day. I don't see anything here that says that he knew that other than just that, I mean, a characterization, an arrangement was made that his last day would be that, but it doesn't say we told him or any kind of specific description of a statement. Well, there was two emails that I, that are actually included in my supplemental excerpt to record that explained the 35 days of, he was told February 1, he's told that, but you have accumulated six and vacation days. We're going to find out how many of those days are left and, and we'll retain you. We won't terminate you until you exhaust those accumulated days. There's two emails that were sent to him that are included in my excerpts of record. One of them telling him you got 35 sick days and the other one saying you got 20 vacation accumulated days. And if you just simply, you know, starting from February 1, February 2, February 3, and count 55 days on work days, it ends on April 15th. Well, I mean, there is documentation that, you know, directly corroborates that April 15th day. It doesn't look like either of those emails say specifically though, that April 15th will therefore be your date of termination and we will stop paying your premiums. Yes, PD informed him of that. Mr. Miltch, Mr. Miltch, what of the fact that he still had work email after April 15th? It looks according to the record that he still had an active work email address until April 21st, and then it was turned back on for a period of time, turned off again on April 26. Wouldn't that cut across, cut against your argument that everybody knew, including him, that his work had terminated on April 15th? Yes, what he was doing after April 15th was simply assisting the people that had He was doing it more as, I believe the emails talk about therapeutic, you know, because he was, you know, had the cancer. But, you know, during those days, he was assisting the people that had taken over his job as the safety environmental guy for American Marine. In an uncompensated manner. Well, he knew he wasn't employed at that time. Hey, Mr. Miltch, the time's down to a minute. I don't know if that clock, Stacy, was supposed to cover Mr. Miltch and Mr. Beaver, but if so, we'll add extra time to be sure Mr. Beaver gets his points made in argument. Thank you, Your Honor. Mr. Miltch, did you have anything further? I'm sorry, what did you say? Did you have anything further? No, I don't, Your Honor. I was just going to mention the fact that, you know, as far as decisions to award benefits, you know, we have specifically delegated that to United of Omaha, so the United Circuit case law makes clear that we're not actually a proper defendant on a risk of Section 502A1B claim. Yeah, I understood that, Miltch. Well, thank you, sir. Okay, thank you. Back to Mr. Beaver. Now, initially, Stacy, he was going to have eight minutes, correct? Is that? Yes, they were going to share the time they told me before court, but I think that it was eight minutes on the day sheet. Right, but all the time was on the clock, so the time was gone, but I'm going to restore eight minutes for Mr. Beaver. Okay. So you get eight minutes to cover your argument. Thank you, Your Honor. May it please the court, counsel, Mike Beaver, I represent United of Omaha Life Insurance Company. I wanted to quickly address this issue of what Mr. Foster knew. I would note, as I think Mr. Miltch did, that this isn't part of Plaintiff's Appeal. The district judge did make findings as a matter of undisputed evidence that Mr. Foster was aware that his employment terminated on April 15th of 2016. There's an additional piece of evidence that hasn't been mentioned, and by the way, I don't mean to suggest in any way challenge the fact the court can make the scope of the appeal, whatever the court wishes, but there's an additional piece of evidence that's pretty important. The district court had elected that it didn't need to deal with it, but on April 19th of 2016, which is just a few days after what American Marine says was the termination, it sent a memo to Mr. Foster outlining his right to apply for continuation coverage under the policy at his own expense. Didn't Mr. Foster claim he never received that? That's correct, Your Honor, and because the district court found that Mr. Foster was adequately informed of his rights for other reasons, the district court chose not to blow the very thick layer of dust off of the mailbox rule, which is what would have been required. It seems like if you need to rely on that, we would have to send it back to the district court to resolve the dispute about whether he received it or whether the mailbox rule is enough, right? You didn't argue anything about that or the mailbox rule to us at this point, so we can't rule for you on that. No, although it is in the record, and that argument is advanced actually by our possession, but the mailbox rule law is laid out in that the underlying facts are not in dispute that American Marine established that the document was sent and Ms. Foster sent it to Mr. Foster, and Ms. Foster claims that she never received it. I think that if the panel decides to affirm that it could rely on any facts in the record, so it wouldn't really matter whether you had argued that in your brief, but that's if we decided to affirm, so maybe you could cover your points as to why you think that he had this knowledge. Well, of course, United of Omaha being the interpreter wasn't party to those kinds of communications with Mr. Foster directly. So other than what American Marine has established, you know, we don't have anything additional on that particular point. My argument in my prepared argument anyway, was mainly directed at this notion that United accepted a premium as to Mr. Foster for the month of May, 2016, which is something that the district court concluded was not correct, and I can certainly address that in more detail. Mr. Foster was terminated according to American Marine on April 15th. On April 26th of 2016, I guess that's 11 days later, they supplied United with a written notice of Mr. Foster's termination and also attached a cover memo asking United to please remove Mr. Foster from coverage effective May 1st, 2016. By the time United received that notification, United had already sent a bill for the month of May. They do that about 15 days in advance because premiums are paid in advance. So it had an understanding that was actually expressed in the employee termination report form that the American Marine sent. And here was the language in that form. If changes are not received within five working days from the date your billing statement is produced, the changes will appear on your subsequent billing statement. And so the idea is, yeah, that the aggregate premium due for the month was paid by American Marine, but always with the understanding that it would be credited back for that premium on the next bill. When the bill for June was issued on May 16th of 2016, it's undisputed that that credit was made with respect to Mr. Foster. Did you tell Mr. Foster that credit was being made? No, Mr. Foster was when employees typically are just generally not party to communications regarding premium payments and group life policies. So why didn't you have an obligation to tell him that no one else is making your premium payments anymore? There's simply no there's simply no obligation under the law for either an insurer or certainly not for an insurer to do that. That kind of an obligation would have to arise under ERISA or arguably under some kind of non preempted state law that regulated insurance. But there is no such law that requires an insurer to make those kinds of communications. And for a host of reasons, including that this arises under an employee benefit plan, those kinds of communications between the employee about coverage come from the employer. You know, the United Supplies, the contract and the American Marines should have given him that notice if any obligation, if there was any obligation. And I would submit there as just as for us, there is no legal obligation for American Marines who have done that. But I'm just simply saying if there was such an obligation, it would be that of the employer. There is no such obligation for a group insurer. But the termination report, what you're calling the employee termination report in the reason column, it says last date paid long term disability claim. What's the significance of the fact that it says long term disability claim? So, Mr. Sure.  Foster had also, as of, I believe, February 1st, when he could no longer work, submitted a claim under a different policy for long term disability coverage. And that claim was paid. So, I think my interpretation of that is that the employer is saying the employee is no longer covered by us. He's now on long term disability. He's terminated. Was the long term disability provided by your client? That's correct. He was under a separate policy. Yes. So, at any rate, you know, it was undisputed. The facts that I'm describing are essentially undisputed. And I think Ms. Foster's argument now is based on how you characterize these premium payments and credits that were made. You know, she's characterizing them now, as articulated earlier by Mr. O'Brien, that that constituted an acceptance by United of a premium payment for Mr. Foster for May of 2016. As I've indicated, that was clearly not the intent of either American Marine or United of Omaha. That essentially, that characterization is just completely inconsistent with the undisputed evidence of intent of the parties. That is what the district court concluded as well, that there was no premium paid for Mr. Foster for the month of May 2016. That bill was paid. It was already understood he was terminated from coverage based on American Marines instruction. And it was already understood that United would credit that back in a couple of weeks, which it did on a May 16, 2016 bill. So, therefore, there was no premium paid and accepted by United for Mr. Foster for the month of May 2016. That's the district court's conclusion, and we would respectfully submit that that conclusion should be affirmed by this court. Could I just ask you if there's been any attempt to mediate this case? I understand that the Ninth Circuit Mediation Office did make an attempt, and I'm not privy to the reasons, but pretty quickly concluded that it couldn't be settled. That was before the briefs were filed? Correct. So, you know, for whatever reason, I actually don't have a clock on my screen. I did earlier, but I don't know. So you're about a minute past the extra eight minutes that I gave you, so we should probably bring your argument on the other argument back on the... to all three counsel. Now, I'm further to Judge Friedland's inquiry about mediation. So I understand how often at the outset of a case, the parties have one view, but sometimes their views change after briefs are filed or after arguments have been held. So my question in general is whether the three of you think there would be any value to our submitting this to mediation again, with the understanding that that would be totally a voluntary question for all three of you. That is, if any party did not want to mediate, they would just tell the circuit mediator that, and then the panel would not be informed by the... the circuit mediator, which, if any of the parties didn't want to mediate. So, I mean, it's totally voluntary and no knowledge would come to us, except all we hear from a mediator is either the parties are going to proceed to mediate or the parties are going to step back. And my question is, would it be a waste of time or would it be something that all three of you might have some interest in? And I realized that any one of the parties here might view this as a case where for policy reasons of the client individually, it's an all or nothing kind of proposition. And mediation's off the table, but it's also possible that you'd be interested in it. So that's my question. Your Honor, this is Jim O'Brien on behalf of the estate and Kelly Foster. We certainly have no objection to proceeding to mediation if counsel or the elements are interested. Okay. I only raised it because Judge Friedland had posed that question and it's a valid question, I think. But I'm not going to put Mr. Mills or Mr. Beaver on the spot to say whether they'd be interested. But if the panel decides to have a mediator contact the parties, then you can express your view to them in confidence. But that's only if we do it. Our panel has not conferred on this issue at all. We typically, we do not pre-confer. And so when we hear one panel member with a question, we have to discuss it in conference. We'll proceed with what I think that covers the appellee's argument. Mr. O'Brien, I think you have a little time left. Thank you. And I won't take too much time of the court. I can tell you that I would disagree with Mr. Beaver. There were four months in which premiums were paid after February 1st. And you think that there's been some confusion in the district court because there may be an apprehension that those premiums were paid because somehow, because he was receiving sick leave and vacation pay, that he was actively working, which is not the policy provision. So there's language in the policy that specifically excludes it when you're not working 120 hours in a month. Mr. O'Brien, what is your position as to when Mr. Beaver was terminated? He thought he was going to go back to work till the day he died. When I, that's not in the record. I can tell you in discussions with Kelly, he never gave up that he would recover. If it's not in the record, we shouldn't consider it. One of the things that is in the record though, is the fact that his emails were turned off twice in April. Doesn't that suggest to, isn't it a reasonable inference that that meant that he knew he was no longer working for the company? No, because in contact with the company, he said, I'm still your, I think there are text messages to this effect, your honor, but he believed he was helping the people who were coming behind him. He had two people who were taking over the job he held prior to becoming ill. And he was trying to train those people out of Alaska, long distance as to what was important in his role as the human resource safety person. And so he thought for the sake of it, whatever, I don't want to get into his thought, he was using his time to make sure that quality people followed in the job duties that he knew he had. With respect to, um, uh, these payments, I, uh, I believe below doc, uh, uh, judge Christensen may have been confused by not recognizing the difference between premiums paid for a, an employee active, uh, actively working 120 hours a month. And as Mr. Milch had earlier said, there was, uh, a, a, a, a, a, a, a, a, a, a, a, a, a, a, a, some sick leave and some vacation time. He even used the word payroll and that's something I'm not familiar with in this case, as far as I know, Mr. Um, Foster was not being paid. He was cashing in an employee benefit on vacation and sick leave. And so I, but, but it's easy to get confused that perhaps his actively working status might have covered when he was not in fact working 120 hours a week, which is why we emphasize the only basis for premium payment after February 1st is as a disabled employee. And I would point out to, um, uh, that there was a question asked about the, um, notification that went to United. Um, in that record, that is a fax that went only to United. Kirk never got a copy of this, um, facts that said we're terminating him and please terminate him on the benefit. So Mr. Prentice is cool. If I may interject, I don't want to be like the late judgment justice when Quiston say to somebody times up and stop their argument in mid sentence. We'll do your honor to bring your argument to a close. Okay. Could I just ask one more question? So your idea that he was being paid as a disabled employee for you to win, do we have to believe he just never was terminated? He was still an employee and the layoff didn't mean that he wasn't. There may be a deeper dive in the idea that there is some independent authority under the policy for American Marine to terminate a disabled employee who's only receiving disability benefits. Uh, I'm not trying to dive too deeply into the rationale behind termination, but, um, I can't go beyond telling you that there is, uh, I don't know why you would terminate a disabled employee, but the answer is yes, we have to, we have to believe he never really was terminated to, to agree with you. I think that's right. And I can wrap this up with the estate is requesting a reversal of the district court order with a directive to order payment of $150,000 in insurance, life insurance, benefits, prejudgment, interest, and attorney's fees. And we think that that is best directed toward United. And in the event United does not pay, then as an option direct that American Marine pay. Thank you. Thank you, Mr. O'Brien. Well, I want to thank Mr. O'Brien, Mr. Melchor, Mr. Beaver for their excellent advocacy. It's a challenging case and, uh, the panel will take it under submission and you'll hear from us in due course. And as I said earlier, we may decide to send an order along the lines Judge Friedland suggested to expose the parties to possible mediation. But if we do that, it's entirely a question that's voluntary for parties to consider if they want to do it. And without further ado, I'll say, Stacey, please note that the Foster case has been submitted. And with thanks to our advocates, we will proceed to the next case. Thank you, Your Honor. Thank you.
judges: Gould, Friedland, Otake